NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEHAD R. MAKBOUL,<br><br>                Plaintiff,<br><br>   v.<br><br>PORT AUTHORITY OF NEW YORK and NEW JERSEY, a Public Corporation/Joint or Common Agency, POLICE OFFICER P. PADILLA, POLICE OFFICER G. NELSON, PORT AUTHORITY DIRECTOR/POLICE COMMISSIONER CHIEF OF POLICE, JOHN DOE, a fictitious name, the real identity presently unknown,<br><br>                Defendants. | Civ. Action No. 09-3540 (KSH)<br><br><br><br><br><br><br><br><br><br><br><br>OPINION |

**Katharine S. Hayden, U.S.D.J.**

Plaintiff, Gehad Makboul, proceeding *pro se*, brings this action alleging that the Port Authority, Port Authority supervisory officials, and two Port Authority Police Officers, Grace Nelson and Peter Padilla, violated his Fourteenth and Fourth Amendment rights when he was selected for a baggage inspection, asked to leave the train station, and ultimately was arrested for failing to comply with the officers' order that he leave. Makboul asserts § 1983 claims of racial profiling, false arrest, and malicious prosecution against Officer Padilla; claims of racial profiling against Officer Nelson; claims of racial profiling, malicious prosecution, and a failure to adequately train against the Port Authority Director/Police Commissioner and Chief of Police; and claims of racial profiling, false arrest, malicious prosecution and failure to adequately train

1

against Port Authority. After conducting discovery, all defendants now collectively move for summary judgment, arguing that Makboul's claims lack factual basis. For the following reasons, defendants' motion for summary judgment is granted.

## I.   Statement of Facts

New Jersey Local Civil Rule 56.1 requires the moving party on a motion for summary judgment to furnish a statement of material facts not in dispute, and the nonmoving party to furnish "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement." L. Civ. R. 56(1)(a). "[A]ny material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion." *Id.* Makboul failed to file a 56.1 Statement with his Opposition to this motion.

When as here a *pro se* litigant fails to comply with Rule 56.1, courts have relaxed the rule and drawn the facts from available sources, including the pleadings and discovery materials. *Jordan v. Allengroup Wheaton*, 218 F. Supp. 2d 643, 646 (D.N.J. 2002), *aff'd* 95 Fed. App'x 462 (3d Cir. 2004); *Folsom v. Superior Ct.*, 2008 U.S. Dist. LEXIS 31994 (D.N.J. Apr. 17, 2008) (using facts drawn from various submissions of *pro se* litigant). Therefore, the below recitation of the facts is drawn from defendants' 56.1 Statement and supporting documentation. Those facts that Makboul disputes through his complaint and discovery materials are deemed denied; all other facts offered by defendants and supported by the evidence are deemed undisputed.

Defendant, Port Authority, is an organization created by an interstate compact between the states of New Jersey and New York. (Defs' Statement of Undisputed Material Facts ("SUMF") ¶ 1.)  Port Authority operates the Port Authority Trans-Hudson ("PATH") Corporation, which provides the PATH train service between New Jersey and New York. (*Id.* at ¶¶ 3–4.) At approximately 4:30pm, on June 22, 2008, Makboul, arrived at the Journal Square

PATH station to ride the train to New York City to begin his 5:00pm shift as a taxi driver. (*Id.* at ¶ 11; Watson Decl., Ex. B, Makboul Dep. 18:5–18.)  Makboul was carrying a small black plastic shopping bag that contained a box of tissues he had purchased for use in his taxi. (Compl. p. 2, ¶ 5; Watson Decl., Ex. B, Makboul Dep. 28:7–22.)

After he got off the escalator and entered the concourse level of the Journal Square PATH station, Makboul was selected by Officer Padilla for a bag inspection. (Watson Decl., Ex. B, Makboul Dep. 27:14–24; SUMF ¶ 12.)  In the aftermath of the September 11, 2001 terrorist attacks, the Port Authority Police Department (the "Department") had begun conducting random baggage inspections.  (SUMF ¶¶ 6–7.)   The Department's baggage inspection procedure requires officers to randomly select patrons for inspection.  (Watson Decl., Ex. A, Port Authority Police Department Memorandum.)   The Department procedure permits patrons to refuse inspection, but a refusal results in being denied entry to the PATH train. (*Id.*)

Following Officer Padilla's instruction, Makboul walked over to the table where Officer Nelson was conducting bag inspections. (SUMF ¶ 13.) The parties dispute whether Makboul "threw his bag" on the table angrily or simply placed it in front of Officer Nelson.  (*Id.*; Watson Decl., Ex. B, Makboul Dep. 38:4–9.)  After waiting briefly for the bag inspection to begin, Makboul left the table, without speaking to Officer Nelson, to fill his MetroCard at the ticket machine. (SUMF ¶14; Watson Decl., Ex. B, Makboul Dep. 30:15–19; 34:7–12.)  The ticket machine was located behind the table where Officer Nelson was completing the bag inspections. (Watson Decl., Ex. B, Makboul Dep. 34:13–35:9.) When Makboul returned to the table, Officer Nelson admonished him for leaving his bag and walking away. (SUMF ¶15.)  According to Nelson and Padilla, Makboul "responded by yelling" and "hurling accusations in a combative manner."  (SUMF ¶ 16; Watson Decl., Ex. E, Answers to Interrogatories.)   Makboul, in his

3

deposition, contends that he never yelled at the officers and that he is soft spoken. (Watson Decl., Ex. B, Makboul Dep. 37:16–23; 65:2–10.)

The entire incident took place on the concourse level of the Journal Square Station and impeded the flow of travelers. (SUMF ¶ 20.)  Because the officers were concerned about the effect Makboul's behavior had "on the peace and safety of the members of the traveling public," they asked him to leave the station. (SUMF ¶ 21.)  Makboul refused to leave, and the officers contend he continued to "speak in a loud voice." (SUMF ¶¶ 19, 22; Watson Decl., Ex. B, Makboul Dep. 36:23–37:11; 40:5–19.)  Because Makboul refused to cooperate with their repeated orders to leave the station, the officers placed him under arrest and filed charges against him for defiant trespass, obstructing administration of law or other governmental function, and disorderly conduct. (SUMF ¶ 24.)

When the officers arrested Makboul, they handcuffed him and led him to a holding cell at the PATH Police Command in the Journal Square station. (*Id.* at ¶ 25.)  Later that evening, he was transported to the Jersey City Police Department Crime Information Bureau to be fingerprinted and photographed.  (*Id.* at ¶ 26.)  Makboul was shortly thereafter released on his own recognizance and given a Summons and Complaint to appear in Jersey City Municipal Court.  (*Id.* at ¶ 27; Watson Decl., Ex. E, Answers to Interrogatories.)  No bail was required. (Watson Decl., Ex. E, Answers to Interrogatories.)  The record is undisputed that Officers Nelson and Padilla did not receive notice of the dates Makboul's case was scheduled for trial from the Port Authority liaison to the municipal court. (*Id.* at ¶ 28.)  After about six months, the criminal complaints against Makboul were dismissed for lack of prosecution because the officers failed to appear. (*Id.* at ¶ 29; Watson Decl., Ex. B, Makboul Dep. 61: 7–10.)

Makboul subsequently filed this action in New Jersey Superior Court alleging the Port Authority, Port Authority Director/Police Commissioner, Port Authority Chief of Police, and Officers Padilla and Nelson violated his constitutional rights during the incident, resulting in pecuniary harm and emotional distress. Defendants removed the case to this Court.

## II.     Standard of Review

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A factual dispute is genuine if a reasonable jury could find in favor of the nonmoving party and it is material only if it bears on an essential element of the plaintiff's claim. *Fakete v. Aetna, Inc.,* 308 F.3d 335, 337 (3d Cir. 2002).

When deciding a summary judgment motion, a court must "'view the record and draw inferences in a light most favorable to the non-moving party.'" *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (quoting *In re IKON Office Solutions, Inc.,* 277 F.3d 658, 666 (3d Cir. 2002)). However, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth specific facts showing that there is a genuine issue for trial. *United States v. 717 S. Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993) (internal quotations omitted).

## III.    Analysis

Makboul makes numerous claims that his constitutional rights were violated pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim for relief under § 1983, Makboul must first allege a violation of a right secured by the Constitution or laws of the United States and, second, that the alleged violation was caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

    A.    Unlawful Discrimination and Racial Profiling on the part of Officers' Padilla and Nelson

Makboul alleges in Counts I, II, IV, and VIII of his complaint that Officers Padilla and Nelson violated his Fourteenth Amendment right to Equal Protection by engaging in racial profiling when selecting him for a random bag search. (Compl. 2, ¶ 7; 3, ¶ 2; 4, ¶ 2.) To state an Equal Protection claim based on racial profiling, Makboul must demonstrate that the officers' actions "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002). Viewing the facts in the light most favorable to Makboul, his claims lack evidentiary support.

To establish discriminatory effect, there must be evidence that the plaintiff is a member of a protected class and was treated differently than similarly situated individuals of an unprotected class. *Id.* Accepting that Makboul is a member of a protected class due to his Middle-Eastern descent, the Court has examined the record and determined that the evidence

Makboul has adduced fails to demonstrate that Officers Padilla and Nelson treated him differently than similarly situated people of an unprotected class at the PATH station.

In *Martin v. Monroe Twp.,* Judge Cooper dismissed plaintiff's claim of racial profiling because he "had not identified any comparator" to demonstrate he was treated differently from similarly situated persons. 2011 U.S. Dist. LEXIS 6996 at * 23 (D.N.J. Jan., 25, 2011). Makboul has also failed to identify any "comparator." Makboul could not recall any other persons being selected for bag checks because "there were too many people going around." (Watson Decl., Ex. B, Makboul Dep. 30:20–31:2.) When asked whether he thought he was selected for a bag search as a result of ethnic or racial profiling, Makboul simply responded, "I don't know." (*Id.* 52:20–53:7.) Makboul also admitted that at the time of the incident it had not occurred to him that he may have been selected as a result of racial or ethnic profiling. (*Id.* 55:2–17.)

Additionally, the record does not reflect evidence to suggest either officer was motivated by racial animus. Officer Padilla's Investigation Report states that Makboul was "randomly selected to have his bag inspected" and there is no evidence putting that in dispute. (Watson Decl., Ex. C, p. 4) The report makes no references to Makboul's Middle-Eastern descent. In fact, in the race box on the Criminal Complaint Report Officer Padilla entered a "W" for "white." (*Id.*) Absent evidence of both discriminatory effect and discriminatory purpose, Makboul's Equal Protection claims against the officers must fail.

B.   False Arrest Claims Against Officer Padilla

In Counts V, VI, and VIII Makboul alleges that Officer Padilla falsely arrested him and unlawfully charged him with violating three New Jersey Criminal Statutes. To establish a Fourth Amendment claim for false arrest, Makboul must demonstrate that Officer Padilla lacked

probable cause to arrest him. *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988); *Pollock v. City of Phila.*, 403 Fed. App'x 664, 669 (3d Cir. 2010). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). At the heart of the inquiry is the reasonableness of the officer's actions in light of the circumstances known at the time of the incident. "[I]n analyzing false arrest claims, a court to insulate a defendant from liability need find only that '[p]robable cause . . . exist[ed] as to any offense that could be charged under the circumstances.'" *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)). Therefore, provided Officer Padilla had probable cause to arrest Makboul for any one of the three offenses, Makboul's false arrest claim must fail.

"The validity of an arrest is determined by the law of the state where the arrest occurred." *Myers*, 308 F.3d at 255. Officer Padilla issued a criminal complaint against Makboul for: (1) defiant trespassing, N.J.S.A. 2C:18–3(b); (2) obstructing administration of law or other government function, N.J.S.A. 2C:29–1(a); and (3) disorderly conduct, N.J.S.A. 2C:33–2(a).

Pursuant to N.J.S.A. 2C:18–3(b), defiant trespass is defined as follows:

> A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in ay place as to which notice against trespass is given by: (1) Actual communication to the actor; or (2) Posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or (3) Fencing or other enclosure manifestly designed to exclude intruders.

*Id.* It is undisputed that Officers Padilla and Nelson told Makboul that he was not permitted to ride the train and had to leave the station. (SUMF ¶ 22; Watson Decl., Ex. B., Makboul Dep.

36:23–37:11, 40:5–19.)  According to the officers, they were concerned about the effect of Makboul's behavior on the peace and safety of those traveling through the station because the incident unfolded over the course of several minutes on the busy concourse level.  (SUMF ¶¶ 20, 21.)  Viewing the facts in the light most favorable to Makboul, and accepting as true his assertion that he did not yell at the officers, it remains undisputed that he did not leave the station when the officers told him to.  Makboul's testimony further makes clear that the officers did not arrest him until after he had been repeatedly told to leave and failed to comply. (Makboul Dep. 37–40.)

The officers' repeated directive that Makboul leave the station constituted an "actual communication" under the defiant trespass statute.  *State v. Brennan,* 344 N.J. Super. 136 (App. Div. 2001), *cert. denied*, 171 N.J. 43 (2002) (upholding a conviction for defiant trespass where the actor failed to comply with officers' directive because "[a]lthough defendant had been lawfully on the premises, when the police officers asked him to leave, that privilege was revoked.  The notice to leave was clearly and repeatedly given.").  Makboul's failure to leave the station after repeatedly being told to do so amounts to disorderly trespass, and Officer Padilla therefore had probable cause to arrest him.

As indicated, it is unnecessary to examine the other statutes upon which the arrest was made, because the record easily establishes that Makboul's conduct was such that the officers had probable cause to charge defiant trespass, and thus the false arrest claim fails.

      C.      Malicious Prosecution Claims Against Officer Padilla

Counts VI and VIII of Makboul's complaint allege that Officer Padilla maliciously prosecuted him in violation of his Fourth Amendment rights. "To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding

was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Phila.,* 582 F.3d 447, 461 (3d Cir. 2009); *White v. Brown,* 408 Fed. App'x 595, 599, (3d Cir. 2010). Under New Jersey law, "[a] malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Campanello v. Port Authority of New York & New Jersey*, 2010 WL 3429571 at *2 (D.N.J. August 27, 2010) (citing *Lind v. Schmid*, 67 N.J. 255 (1975)). The plaintiff must establish each element of the cause of action; if plaintiff fails to prove any one element, the cause of action must fail. *Brunson v. Affinity Federal Credit Union*, 199 N.J. 381, 394 (2009).

It is undisputed that Officer Padilla initiated the criminal proceedings against Makboul; therefore, the first element of the malicious prosecution claim is not at issue. The second element, favorable termination, is evaluated based upon "whether the termination was or was not dispositive as to the accused's innocence of the crime for which he was charged." *Rubin v. Nowak,* 248 N.J. Super. 80, 82 (App. Div. 1991). In *Rubin*, the court found that an administrative dismissal of charges, prior to presentation to the grand jury, was a favorable termination of a criminal proceeding for purposes of a malicious prosecution claim. *Rubin*, 248 N.J. Super. at 84. The Court reasoned that there was "nothing in the record to suggest that the prosecutor [dismissed the charges] for any reason other than a careful determination of plaintiff's innocence." *Id.* The present case is distinguishable because the charges against Makboul were dismissed by the Jersey City Municipal Court for lack of prosecution. There is nothing in the

10

record to suggest that the charges were dismissed because the court or the prosecutor determined Makboul was innocent of the crimes. *See Hilton v. Whitman,* 2008 U.S. Dist. LEXIS 102157, at \*37 (D.N.J. Dec. 15, 2008). The record demonstrates that the charges were dismissed after Officers Nelson and Padilla failed to appear, and Makboul does not dispute that the officers failure to attend was due to the fact that they were not made aware of the trial date. Because the manner in which the charges were dismissed was not dispositive of Makboul's innocence, the favorable termination element of the malicious prosecution claim cannot be satisfied.

Makboul has also failed to adduce evidence that establishes a want of probable cause. Unlike a false arrest claim, which will fail when probable cause is found with respect to at least one of the charged offenses, "a defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified." *Knorr*, 477 F.3d at 85. When evaluating the probable cause element of a malicious prosecution claim, courts must analyze each charge separately. *Id.* (citing *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)).

As previously stated, the undisputed facts demonstrate Officer Padilla had probable cause to arrest Makboul for defiant trespass; therefore, the malicious prosecution claim as to the defiant trespass offense fails. Officer Padilla also arrested Makboul for obstructing administration of law or other government function, N.J.S.A. 2C:29–1(a), and disorderly conduct, N.J.S.A. 2C:33–2(a). A person commits obstruction "if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." N.J.S.A. 2C:29-1(a)(2011). "Under New Jersey's obstruction statute, when a police officer

11

commands a person to stop, [ . . . ] that person has no right to take flight or otherwise obstruct the officer in the performance of his duty." *State v. Williams,* 192 N.J. 1, 11 (2007).

"A person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he (1) Engages in fighting or threatening, or in violent or tumultuous behavior; or (2) Creates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor." N.J.S.A. 2C:33–2(a).  Under New Jersey law, disorderly conduct is not limited to incidents that rise to the level of violence. *Tarus v. Borough of Pine Hill,* 105 Fed. App'x 357, 359–60 (3d Cir. 2004).  "[W]here an officer's instructions are obviously reasonable, in furtherance of his duties, an individual toward whom such instructions are directed has a correlative duty to obey them.  If his refusal to respond results in an obstruction of the performance of the officer's proper tasks, this will constitute a violation of the disorderly persons statute." *Brennan*, 344 N.J. Super. at 144.  "'Failure to obey a police order to "move on" can be justified only where the circumstances show conclusively that the order was purely arbitrary and was not calculated in any way to promote the public order.'" *Id.* (quoting *State v. Taylor*, 38 N.J. Super. 6, 30 (App. Div. 1955)).

In this case, defendants contend that Makboul's refusal to leave the station "after repeated warnings to do so, interfered with the efforts of officers Padilla and Nelson to conduct random baggage inspections at the station."  (Defs' Br. p. 14.)  Accepting as true Makboul's assertion that "yelling is not [his] language," it is undisputed that his "refusal to leave the area took place over the course of several minutes" and occurred on the concourse level of the station and thus "impeded the flow of travelers." (Watson Decl., Ex E, Answers to Interrogatories; Defs' Br. p. 3.)  By failing to respond to the officers' reasonable order to leave, Makboul effectively obstructed the performance of the officers' duties, and thereby also violated the disorderly

12

persons statute. *See Brennan*, 344 N.J. Super. at 144. Makboul has not directed the Court to any evidence in the record to support a finding that the officers' request that he leave the station was arbitrary and "not calculated in any way to promote the public order." Because the undisputed facts suggest the officers acted reasonably under the circumstances, probable cause existed to arrest Makboul on the obstruction and disorderly conduct charges.

Makboul has also failed to demonstrate that Officer Padilla acted with malice in arresting him and charging him with the three offenses. "Malice . . . is defined as the 'intentional doing of a wrongful act without just cause or excuse.'" *LoBiondo v. Schwartz*, 199 N.J. 62, 93–94 (N.J. 2009) (citing *Jobes v. Evangelista*, 369 N.J. Super. 384, 398 (App. Div. 2004)). "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Morales v. Busbee*, 972 F. Supp. 254, 261 (D.N.J. 1997). Where a plaintiff lacks direct proof that a defendant intentionally instituted an action against plaintiff without merit, "malice may be inferred from want of probable cause." *Brunson,* 119 N.J. 381, 395. However, a plaintiff cannot merely point to a lack of probable cause to prove malice, and "it is not unreasonable to require that plaintiff, on a defendant's motion for summary judgment, produce at least some extrinsic evidence of malice, rather than relying only upon inference." *Id.* (citation omitted); *see also Pittman v. Metuchen Police Dept.*, 2010 WL 4025692, at *8 (D.N.J. Oct. 13, 2010).

In this case, Makboul has failed to point to any extrinsic evidence in the record to support an inference of malice, or that Officer Padilla acted out of spite, ill will, or other improper motive in instituting the prosecution.

Because Makboul has failed to present evidence to substantiate the favorable termination, lack of probable cause, and malice elements of the malicious prosecution claim, it is dismissed.

D.     § 1983 Claims Against the Port Authority, Port Authority Director/Police Commissioner, and Chief of Police

In addition to his claims against the individual officers, in Counts I, III, V, VII, and VIII, Makboul alleges that Port Authority and various supervisory officials violated his rights through the alleged unconstitutional actions of Officers Nelson and Padilla. Under § 1983, government entities cannot be held liable solely for the actions of agents or employees on a *respondeat superior* theory. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). However, a government entity may be liable "when [the] execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. To be successful "a plaintiff must 'identify conduct properly attributable to the [government entity]' and 'demonstrate that, through its deliberate conduct, the [entity] was the 'moving force' behind the injury alleged.'" *Knight v. Carmike Cinemas*, 2011 U.S. Dist. LEXIS 93460, at *31 (D. Del. Aug. 22, 2011) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Makboul must therefore allege both that Port Authority and its supervisory officials were culpable and that there is a direct causal link between their actions and the alleged deprivation of constitutional rights. *Brown*, 520 U.S. at 404.

In Counts I, III and V Makboul's complaint does nothing more than demand judgment against Port Authority and supervisory officials "as result of the unlawful conduct of its agents, servants, and employees." Makboul has failed to allege any policy[1] or custom on the part of Port

---

[1] With respect to the racial profiling claims, Port Authority has proffered evidence, undisputed by Makboul, that it has an explicit policy prohibiting the use of racial profiling when conducting random baggage inspections. (Watson Decl., Ex. A, Port Authority Police Department Memorandum.)

Authority or its supervisory officials that has directly resulted in a violation of his constitutional rights. Moreover, because Makboul has failed to establish an underlying violation of his constitutional rights by Officers Nelson and Padilla with respect to his racial profiling, false arrest, and malicious prosecution claims, he has no basis upon which to premise his § 1983 claims against Port Authority and its officials. *See Holman v. City of York*, 564 F.3d 225, 23 n.12 (3d Cir. 2009) (noting that plaintiff's "municipal liability claims would have inevitably failed at the summary judgment stage, since we conclude that no constitutional deprivation occurred."); *see also Knight v. Carmike Cinemas*, 2011 U.S. Dist. LEXIS 93460, at *30–31 (D. Del. Aug. 22, 2011) ("Plaintiff has not alleged an underlying constitutional violation, much less deliberate conduct by the City of Dover or any causal link. Therefore, Plaintiff has not stated a *Monell* claim against the City.").

Count VII of the complaint alleges that Port Authority and supervising officials failed in their duty "in training, supervising, overseeing and instilling in the officers the respect of citizen's rights." (Compl. 7, ¶ 8.)  Government entities and supervisory officials may be held liable for the constitutional violations of their employees under § 1983 where plaintiff demonstrates a failure to properly supervise or train employees that "amounts to deliberate indifference to the rights of the persons with whom the [officials] come into contact." *Cty. of Canton v. Harris*, 489 U.S. 378, 388 (1989).  The Supreme Court has made clear that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown,* 520 U.S. at 410.

Makboul does not allege specific facts, let alone support them with proofs, respecting his claim that the officers were improperly trained, and he cannot meet the stringent "deliberate indifference" standard.  More importantly, as discussed above, Makboul has failed to

15

demonstrate the officers violated his constitutional rights. Because there is no underlying constitutional violation upon which to premise § 1983 liability for failure to train, Makboul's claims in count VII must fail. *See Holman*, 564 F.3d at 23 n.12.

  E.  Emotional Distress Claims Against all Defendants

In Count IX, as well is II, III and IV Makboul seeks damages for emotional distress caused by the officers' alleged violation of his constitutional rights. A § 1983 "plaintiff may recover not only out-of-pocket expenses, but also compensation for emotional and mental distress *caused by a constitutional violation*." *Pica v. Sarno*, 907 F. Supp. 795, 803 (D.N.J. 1995). (citing *Carey v. Piphus*, 435 U.S. 247, 255–56 (1978)) (emphasis added). As discussed above, Makboul has failed to establish that the defendants violated his constitutional rights. Therefore, he cannot collect damages for emotional distress pursuant to § 1983.

**IV.**  **Conclusion**

For the reasons stated above, the Court grants defendants' motion for summary judgment [D.E. 22] as to all claims in plaintiff's complaint. An appropriate order will be entered.


  September 29, 2011         /s/ Katharine S. Hayden
                      Katharine S. Hayden, U.S.D.J.